Good morning, your honors. May it please the court, my name is Peter Prakowski and I represent Petitioner Anila Malani. I'd like to reserve three minutes for rebuttal. Ms. Malani is a native Albanian who fled violence that was directed to her by police and other agents of the socialist government because of her democratic activism in 2001. She was beaten, terrorized, and threatened. Her business was destroyed by fire and she eventually left the country for fear of her life. We're here on a petition for review after two decisions of the IJ, the immigration judge, and the Board of Immigration Appeals, the final order of which was in 2005. Now for us to have jurisdiction, you have to contend that this is a mixed question of law and fact, correct? And it seems to me that the facts were pretty disputed and I'm having trouble seeing that it's a mixed question of law and fact. Can you tell me how? Yes, your honor. The facts are not in dispute concerning the dates of when relevant issues occurred. And you don't need to accept Ms. Malani's testimony to conclude that. But doesn't that create the contested issue of fact? I'm having the same problem Judge Callahan is having. No, this court has recognized that you may refer to corroborating evidence such as documentation in order to assist on a jurisdictional issue. But the problem is that the documents create the conflict. That's the problem we're having. There's the issue with regard to the summons or arrest warrant, whatever it is, under Albanian law that's in the record. And then her statements about whether or not she was in Albania up to a certain point in time and when she entered the United States. Aren't all those facts in contention here? No, your honor. The documents are consistent with Ms. Malani's testimony. They placed her in the country as of June 24, which is the day of the first election. But June 25th is when the explosion occurred at her business. No later than that. It was that night. The articles refer to that incident happening the day after the election. And then two days later is what the articles also refer to her staying in the country for at least two days after that, which places us within the year period of the asylum deadline because her application was filed on June 27th, 2002. In fact, that might be the disputed date or the arguably disputed date because the IJ said that took place in July. Right. Well, that's not in dispute. Is there any evidence supporting the July date? No. The application is stamped. It was stamped on June 27th, 2002. It's in the record. And the court has jurisdiction to review that as an error of law because that is not in dispute, that that was the date the application was submitted and the IJ was using the wrong date. In fact, the IJ was using the wrong standard to evaluate the burden, Ms. Malani's burden to prove timeliness. He was he was saying that she needed to prove clear and convincing evidence that she submitted of the date she entered the country. That's not the standard. The standard is she needs clear and convincing evidence that she filed within one year of entering the country. And the undisputed evidence places her in Albania within the one year period. OK, go ahead. So I want to I want to pivot back to one of the primary issues of concern here, which is the due process issue. In effect, ineffective assistance of counsel in a deportation proceeding has two components. First, OK, but why didn't she raise it before the BIA? At the time she was before the BIA, she was being assisted by the same counsel who assisted her before the immigration judge. The record reflects that she was using his address, that he was serving documents on her behalf. He was signing certificates of service and that the address and telephone numbers that she was placing on her documents as a pro se petitioner were the address and phone number of counsel. Let me explain why she didn't realize she'd been the victim of ineffective assistance of counsel. But how does it help with the problem that the issue hasn't been raised or exhausted before the agency? This court has recognized before that when that situation occurs, where the same counsel is assisting during both proceedings, the immigration judge and the Board of Immigration Appeals, then exhaustion is excused. Does she have is she excused from complying with Lizada then? Because she hasn't complied with Lizada, correct? That's true. Lizada, this court does not always enforce Lizada, especially when the deficiencies of counsel are clear as they are here. But if there is an issue of exhaustion, this court also frequently, to the extent it concludes that the petition should be dismissed or denied, then the mandate could be stayed while Ms. Malani pursues a motion to reopen. But the motion to reopen currently would be untimely. It would be purely discretionary at the board. And so it would be essentially futile for her to submit it now without how would this change? If we're prepared to deny the petition but would withhold entry of the mandate, that doesn't change the fact that the motion back to the board is still untimely and is still within the board's discretion. Right. But if it were submitted and acted on, if it were, of course, if it were granted, then there wouldn't be an issue. If it were denied. Same thing was true a few years ago. I mean, basically this issue has been on the shelf for years and you're now suggesting that we should disregard the passage of time and let your client do something that she could have done years ago. Well, what she's been doing in the past years is pursuing administrative remedies apart from the motion to reopen. And that's why the court stayed the case in 2008. She was married to a lawful permanent resident who is now a citizen with whom she shares two children. That's why the court stayed the case. Those negotiations were not fruitful, at least in part because of the existing order of removal. So we're kind of between a rock and a hard place. My sort of last opportunity is before this court. But if you don't give me that opportunity, I could pursue a discretionary relief before the board. You said you wanted to save three minutes. You've got two and a half. I did. Thank you, Your Honor. Okay. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Kosei Yukimori and I represent the United States Attorney General in this case. This petition for review should be dismissed in part and denied in part for the following three reasons. First, this court lacks jurisdiction to review Petitioner's untimely asylum application. Second, review of Petitioner's ineffective assistance of counsel claim is inappropriate at this time. And third, the evidence does not compel the conclusion that Petitioner credibly supported her application with a credible claim. The INA expressly precludes this court from reviewing a denial of an untimely asylum application. How do we know this is untimely? Well, the WIJ got the date wrong with regard to the date of the application. That's correct. That is correct, Your Honor. The application was filed on June 27, 2002. How can we have any confidence in a judgment that she didn't apply within one year when there is evidence that she was in Albania one year before the date of her actual application? There is not, Your Honor. The corroborating documents that Petitioner's counsel referred to was not admitted into evidence. And in the immigration judge's first decision … Her own testimony said it was within one year. That was admitted into evidence. Well, her testimony is contested, Your Honor. Her testimony was not found to be credible. Well, her testimony itself isn't contested. It was undermined by the adverse credibility determination. But I find no evidence whatsoever in support of the proposition that she applied not within the one-year period. What's the contested issue of fact there? Well, Your Honor, she testified that she entered the United States through Italy, France, Mexico. But her passport does not reflect that. What evidence is there that she entered the United States more than one year before the undisputed date of her application? There's no affirmative evidence. There we go. So where's the contested issue of fact? The contested issue is that we don't know when she entered the United States. She could have entered in 2000 when she got her passport. That's not clear. Do you think that's the case? Well, it could be in May. Well, I could be eight feet tall, too, but I'm not. I mean, if we know that the I.J. got the date of application wrong, why should we act like there's no issue of fact or there's simply disputed facts based on something else? Well, the date of the application was filed on June 27, 2001. The I.J. may have misspoke in this decision, but it's clear from the record that she did file an application on June 27, 2001. So how can we have any confidence in the factual finding that her application was more than one year before that date when we know that date was wrong? The immigration judge provided explanatory reasons, Your Honor, substantial reasons in this case to show that Petitioner failed in her burden to establish by clear and convincing evidence that she entered the United States and filed an application within one year of her entry. But is that a contested issue of material fact or simply a failure of proof on the date of entry time? It is contested, Your Honor, because Petitioner states that she entered after June 27, 2001. That's her factual assertion. However, the evidence contradicts that claim. The adverse credibility determination. No evidence contradicts that claim because you just told me there is no affirmative evidence that she entered before June of 2001. Right. The immigration judge stated there was no documentation, that only her testimony, which was not reliable, was the only basis for her claim that she entered after June 27, 2001. It should be further noted that she admitted to the factual allegations in the NTA, which are considered judicial admissions pursuant to this court's decision in Sanabian v. Holder. But if I understand your position, even if we conclude that we do have jurisdiction because the claim was timely filed, then we would look at whether substantial evidence supports the adverse credibility determination. And if we conclude that it does, then she loses on the merits, right? That would be correct, Your Honor, as explained in the government's footnote after its jurisdictional argument. However, the government's initial position is that the court does not have jurisdiction, that what is the only thing that's undisputed in this case is that her entry date is unknown. And unlike the case Kernibasan, which is cited in Petitioner's reply brief, there is not evidence that necessarily establishes her entry into the United States after June 27, 2001. Therefore, that case is distinguishable from here. Well, if we did get to the merits, what do you think is the most significant inconsistency for assessing her credibility? There are two, Your Honors, and one supplemental. One is the omission of her claim of the most difficult moment in her life, an event that convinced her to come to the United States, which allegedly occurred on June 27, 2001, after she allegedly exposed voter fraud, after her business was destroyed by expert bomb makers, that these four gunmen came and threatened her with rape. Now, that assertion is nowhere in her declaration. Well, why isn't this a case where an alien provided a brief description of her persecution and added more detail during the hearing process, which was the situation we approved of in Lopez Reyes v. INS? Well, this is a different story, Your Honors. In her declaration, she states that everything, all this persecution with paramilitary thugs occurred in April 2001. In her testimony, however, she states that the incident with the demonstrations occurred two days after the official elections, where she uncovered voter fraud or allegedly did so, thereby irritating the opposing party. And after that, she was at a demonstration at Bushati, where she was allegedly terrorized by the police, or the so-called military thugs. And a few hours after that, her business was destroyed by a bomb. And then the next day, Your Honors, the next day is the pivotal moment in her claim, where she states that this is the reason why I came to the United States. It's because on June 27th, after all of this happened, four armed gunmen came to her home, in front of her home, came out and threatened her with rape. They did not touch her, but that was not the issue. The issue was after the culmination of all these events, they came with this final threat, and this caused her to come to the United States. That's entirely missing from the declaration. And the omission is significant because it paints a different story. It's a different claim, Your Honors. Something, an isolated demonstration in April 2001 happens. That's what her declaration says. Her testimony paints a much different story. It is, it coincides with political events. It makes more sense that just the threat of rape convinced her to come to the United States, because of all these events that occurred beforehand. And so because of these discrepancies, it's not just a clarification. It's a telling of an entirely different story, Your Honor. And therefore, the substantial evidence would support the immigration judge's decision. As well, the discrepancy in the dates directly relates to this different storytelling. If something happened in April 2001, it's not as convincing as if when something happened in June 2001, according to Petitioner's story, because of this. I don't know that the April 2001 threats are the most significant part of the declaration. I think the destruction by bombing is the more significant part of the declaration. Your Honor, the declaration states that in April 2001, all of these things happened. That as we departed from the Democrat – in April 2001, as we departed from a Democratic rally at Bushati, my husband and I were beaten, terrorized, and threatened on our way home. We were told to stop our Democratic Party activities or we would be killed. And when we got home, we found out that our business had been destroyed. So her story in her declaration is that her business was destroyed and that she had some kind of demonstration. All of this occurred in April 2001. It's not tied at all to the election fraud that she uncovered. There's no – in her declaration, there's no reason why the opposing party would harm the Petitioner in the case. But in her testimony, she creates a more coherent or – she changes the chain of events. She adds another event to make it more convincing that she had, in fact, been harmed by these persons. And in addition, a supplemental reason for substantial evidence supporting the adverse credibility determination is her testimony regarding the source of the newspaper articles that were submitted in this case. The immigration judge ultimately excluded them. However, in his initial decision, the immigration judge stated that the reliability of these documents are really – are questionable, especially given the fact that Petitioner testified initially when she was asked, how did these people get this information? She stated that at the time of the incident, that is, at the time of the bombing, she refused to give testimony. She refused to give an interview to these people, but that other people may have given the newspaper information. And then she was asked, well, how did the newspaper and the journalists know that your husband was in hiding and that you were in the United States? I mean, there's no way that she could have conveyed that information if at the time she was requested to interview was at the time of the bomb. After several unresponsive answers, she later stated that, oh, it was by written correspondence, suggesting that all of this occurred much later from contradicting her initial testimony. Just briefly on the ineffective assistance of counsel claim, Your Honors, exhaustion should apply here because, in particular, Petitioner is alleging IAC both before the IJA and the Board of Immigration Appeals, and he has not mentioned any allegations of supporting an IAC claim before the Board of Immigration Appeals. Thank you. Thank you very much. Mr. Berkowski, you've got two and a half minutes. Thank you, Your Honor. Okay. Regarding the alleged omission from an incident that was described in testimony versus her application, the immigration judge actually found that that incident was in her application. So there was no omission. But what about the discrepancy between April and June? That does seem to be an inconsistency. That is inconsistent, but it was merely a mistake. It does not say anything about her. It does not enhance her persecution claim. Well, but it makes it logically inconsistent because if the events occurred in April but the national elections were not held until the summer, then there can't be a causal nexus between her discovery of voter fraud during the national elections and the destruction of her shop and the arrival of the thug. The declaration in support of the application actually describes this incident in the same paragraph in which she describes the election. So the April date is a pure mistake. It is a what? It's a pure mistake. Pure mistake. Ms. Malani was surprised, in fact, when she was confronted with it at the hearing. She was describing the elections in her declaration. The April date got in there incorrectly. Just quickly, on the issue regarding reaching the merits, even if the credibility issue is not overturned, the court can, as I said, the court can use corroborating evidence and undisputed facts, including historical facts, such as when elections occurred and corroborating documents, which, by the way, the I.J. did admit. On the record, page 123, he admitted those documents. Those can be used to establish a timeline. But then it would have to compel a different result, correct? That's a tough standard of review for you. Well, you're saying if we just say, okay, but then you want us to grant the petition and reverse the BIA, we have to find that it would compel that result, correct? You have to find that there was an error. That could be returned to the BIA to reevaluate without taking the errors out. So here it would be the one-year bar, and her asylum claim could be evaluated separately. But he did decide. I'm not sure what you're asking us to do. There was a determination on the merits.  The record is fully developed on that claim, is it not? Yeah, I believe you're right, Your Honor. Okay. All right. Thank you very much. And on behalf of the Court, I want to thank you for taking the appointment. We really appreciate it. My pleasure, Your Honor. Thank you.
judges: Tallman, Clifton, Callahan